**IN THE UNITED STATES DISRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **James L. Quinn, *et al*,** | : | **Case No. 3:19-cv-00241** |
| **Plaintiff,** | : | |
| | : | **Judge Thomas Rose** |
| **v.** | : | |
| | : | |
| **City of Eaton, Ohio,** | : | **DEFENDANT CITY OF EATON'S** |
| | : | **MOTION FOR SUMMARY** |
| **Defendant.** | : | **JUDGMENT** |

Defendant City of Eaton, Ohio (referred to herein as the "City"), by and through the undersigned as counsel, moves the Court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment on all of Plaintiffs' claims in Plaintiffs Collective Action Complaint ("Complaint") filed on August 9, 2019. (Doc. No. 1.) Because there remain no genuine issues of material fact, and because reasonable minds construing the evidence can come to but one conclusion, the City is entitled to summary judgment as a matter of law. A Memorandum in Support is accompanied for the Court's consideration.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., LPA

/s/ *Dawn M. Frick*
Jeffrey C. Turner (#0063154)
Dawn M. Frick (#0069068)
Michael D. Rice (#0090085)
8163 Old Yankee Street, Ste. C
Dayton, Ohio 45458
Phone: (937) 222-2333, Fax: (937) 222-1970
Emails: jturner@sdtlawyers.com
　　　　dfrick@sdtlawyers.com
　　　　mrice@sdtlawyers.com
*Attorneys for Defendant City of Eaton, Ohio*

## I.     INTRODUCTION AND OVERVIEW OF FACTS

### A.     *The Eaton Fire and EMS Division*

Plaintiffs James Quinn ("Quinn") and Randall Anderson ("Anderson") each served as Battalion Captains in the City of Eaton Fire Department. (Doc. 1, PageID 1.) Plaintiff James Henry Roberts ("Roberts") served as a Battalion Captain until his employment was terminated for dishonesty in June 2019. (Roberts Dep. Doc. 22, PageID 806, 934.)  Plaintiff Mallory Lewis ("Lewis") served as a Lieutenant in the Fire Department. (Doc. 1, PageID 1.)

Battalion Captains are second in command in the fire department hierarchy and organizational chart, below the Fire Chief but above part-time and volunteer firefighters and paramedics. (Smith Dep. Doc. 23-2, 23-3; Anderson Dep. Doc. 25, PageID 1919, 2023, 2024; Quinn Dep. Doc. 21, PageID. 429.) The Lieutenant position is to the side of the organizational chart because of the positions' administrative functions. (Doc. 23, PageID 1018.)  In the Eaton Fire Department, there are approximately 45 employees, which includes five full-time positions— the Fire Chief, the Lieutenant and the three Battalion Captains. (Doc. 23, PageID 1015-1016.)  The remaining positions consist of part-time employees and volunteers. (Doc. 23, PageID 1015.)

The Fire Chief's office is in Station 1 and the Battalion Captains office is in Station 2. (Doc. 25, PageID 1893, 1895.)  The Fire Chief works Monday through Friday during the day shift. (Doc. 25, PageID 1896.)  Battalion Captains are scheduled to work 24 hours on and 48 hours off. (Doc. 23, PageID 1167.)  The Battalion Captains receive an annual salary in excess of $455 a week, which is paid biweekly. (Id.; Doc. 23-9, PageID 1468.)  The Lieutenant works a 40-hour work week and does not work on a rotating shift. (Doc. 23, PageID 1018.).  The Lieutenant works three 12 hour shifts per week and one 4-hour shift for which she is paid an annual salary in excess of $455 per week and paid biweekly. (Doc. 23, PageID 1167; Doc. 23-9, PageID 1468.)

1

Battalion Captains and the Lieutenant are the highest-ranking officers on each shift. The City of Eaton is divided into three shifts.   Battalion Captains are assigned to one of three rotating 24-hour shifts- Shift A, B or C. (Doc. 23, PageID 1230, 1167.)   Each of the three Battalion Captains's is scheduled for one 24-hour shift every three days. (Doc. 23, PageID 1023-1024.)  On each shift a Battalion Captain is responsible for the three other personnel that ride on the fire engine with him, the two personnel that ride on the Medic and any volunteer responders that respond to an alarm. (Doc. 23, PageID 1014.)  The Eaton Fire and EMS Division operates as a paramilitary organization with specific ranks and chain of command. (Doc. 25, PageID 1920; Doc. 21, PageID No. 428, 541.)  It is important to have a paramilitary structure to make sure that things run smoothly, efficiently, and safely. (Doc. 21, PageID 541.)  In the chain of command of the Eaton Fire Department, the part-time and volunteer firefighters report directly to the Battalion Captains or the Lieutenant in charge of their shift. (Dep. Doc. 22, PageID 798.)

     B.    *The Battalion Captains Job Responsibilities*

The City of Eaton has a job description for Battalion Captains. (Doc. 23-11, PageID 1474-1477.)  The job description for the Battalion Captain includes the following "General Purpose" of the Battalion Captain:

- provides fire, rescue and emergency medical service supervision/leadership;
- expected to plan, organize and command activities for the entire shift;
- supervise personnel, fire suppression command and control activities;
- fire prevention and emergency medical care activities and fire prevention;
- training, scheduling, maintenance of records and reports, administrative duties and other related work as required by the Chief. (Id.)

The Job Description further provides that the Battalion Captain supervises all paid, part-time, and volunteer fire department staff on assigned shift, either directly or through other subordinate officers and provides supervision in the absence of the Fire/EMS Chief. (Id.)  The Job Description sets for the qualifications, including but not limited to, "[m]ust *** demonstrate supervisory and

2

command experience," and the "an ability to perform under strenuous and stressful conditions at emergency incidents and under the constant stress of managerial responsibility." Finally, desired qualifications include "supervisory and command experience." (Id.) In addition, the Job Description identifies the "Essential Duties and Responsibilities" for the Battalion Captains position. Pursuant to the Job Description, approximately 60% of the essential duties and responsibilities include supervising, management organizing, implementing, and motivating fire personnel. (Id.) Furthermore, the "Peripheral Duties" including tasks such as maintaining accurate records, preparing and administering performance appraisals of personnel; making recommendations and assisting in the hiring and firing of employees; making recommendations and advising the Chief in matters of discipline. (Id.)

Anderson is Battalion Captain and Shift Commander for A Shift. (Doc. 25, PageID 1893.) After being promoted to Captain, Anderson obtained his Fire Instructor certification. (Doc. 25, PageID 1899.) At times as a Battalion Captain and a Fire Instructor and EMS instructor, he assists or provides training to the Department. (Doc. 25, PageID 1939.) Each Battalion Captain has a specific special assignment in addition to other duties. Anderson was responsible for the day to day operations of A shift, as well as facility maintenance, public education and fire prevention activities. (Doc. 23-4, PageID 1231.) Roberts was responsible for the day to day operations of B shift as well as vehicle maintenance, fire gear and equipment. (Id.) Quinn was responsible for day to day operations of C shift as well as training officer for the division. (Doc. 23-4, PageID 1231; Doc. 23-20, PageID 1513-1514.) He also served as president of the Fire/EMS Association and oversaw all the activities for that aspect of the Division. (Id.)

Quinn is Battalion Captain and Shift Commander for C Shift. (Doc. 21, PageID 427.) During his tenure as Battalion Captain for the City of Eaton Fire Department, the City has allowed him to take multiple leadership courses, including attending the National Fire Academy for

"Effective Leadership for Fire & EMS Organizations." (Doc. 21, PageID 460-462; 674.)  The class covered command and control of incidents, including major incidents. (Doc. 21, PageID 461.)  In 2016, Quinn believed he was qualified for and thus, applied for, the position of Fire Chief. (Doc. 21, PageID. 443.) At that time, he submitted his resume and cover letter to the City Manager. (Doc. 21, PageID 673-674.)  In his resume, and consistent with the Battalion Captain Job Description, Quinn described his duties as a Battalion Captain as:

> [m]anages daily operations including staffing, apparatus and equipment maintenance and fire safety inspections.  Command supervision and mitigation of emergency incidents. Coordinates and conducts Fire/EMS training. Monthly scheduling of Fire/EMS personnel. Delivers fire certification and driver operator instruction. Manages and coordinates public education events. (Doc. 21, PageID 674.)

Because Quinn was the training officer and a fire instructor, (Doc. 21, PageID 453.), he at times trained others in the department. (Doc. 21, PageID. 450.)  As training officer, Quinn sets up the schedule of which topic is going to be covered each month. (Doc. 21, PageID 453.)  Moreover, Quinn has administrative rights in the software that tracks the training for each of the members and tracks that for the department each month. (Doc. 21, PageID 455.)  When there was a training session, whoever conducted the training would sign a document, give it to Quinn and he would input the information into the Emergency Reporting Software. (Doc. 21, PageID 516.)  Additionally, Plaintiff Quinn does not always respond to an incident on Engine 16, but often takes the utility truck to a scene. (Doc. 21, PageID 484.)

    C.  *The Lieutenant Job Responsibilities and Duties*

Regarding the Lieutenant Position held by Lewis, in the Job Description (Doc. 24, PageID 1755), the General Purpose of the position similarly states that the Lieutenant:

- Provides emergency medical service supervision/leadership
- Is part of the City of Eaton Fire and EMS Division Leadership Team
- Is expected to plan, organize, and direct activities for EMS operations

Furthermore, the Job Description provides that the Lieutenant assists with the supervision of all part-time EMS personnel, either directly or through other officers and provides supervision in the absence of the Fire/EMS Chief and Captain. (Doc. 24, PageID 1756.) Moreover, the qualifications include demonstrating management experience and notes that the job demands an ability to perform "under the constant stress of managerial responsibility." (Doc. 23-12, PageID 1479; Doc. 24, PageID 1756.) Other than the fact that the Lieutenant does not perform vehicle maintenance and that the description does not reference fire duties if she response to a fire call, Lewis does not believe there are any other inaccuracies in the Lieutenant's Job Description. (Doc. 24, PageID 1622.) Lewis, as Lieutenant, is further responsible for and in charge of scheduling the shifts for the Fire and EMS. (Doc. 24, PageID 1625; Doc. 21, PageID 476.) Additionally, the Lieutenant is responsible for restocking supplies that cannot be obtained from the hospital. (Doc. 24, PageID 1646; Doc. 21, PageID 545.) If the Lieutenant rides on the medic, the Lieutenant is the acting paramedic on the ambulance and the EMT that is with her is under her direct supervision. (Doc. 23, PageID 1018.)

      D. *The Operations of the Eaton Fire and EMS Division*

There are two fire stations in the City of Eaton. The Department's total operational staffing level on one day is six employees. (Doc. 23, PageID 1031.) However, minimum staffing levels are four employees in a day. (Id.) Station 1 is staffed 24 hours a day with two part-time employees. (Doc. 23, PageID 1030-1031.) Those two part-time employees are assigned to the first out Medic 16 unit. (Doc. 23, PageID 1031.) Station 2 is staffed 24 hours a day with four employees. (Doc. 23, PageID 1028.) The shift would include a Battalion Captain, part-time Driver/Operator, part-time Firefighter/EMT and part-time firefighter/paramedic. (Doc. 23, PageID 1028-1029, 1231-1234.) Lewis filled one of those positions for 36 hours a week or three twelve-hour shifts. (Doc. 23, PageID 1029; Doc. 24, PageID 1603.) Lewis typically works her 40-hour work week Monday

through Friday. (Doc. 24, PageID 1603.) Lewis then works one additional four-hour shift out of Station 1. (Id.) During that four-hour shift, she primarily performs administrative duties and typically would only respond on apparatus for a general alarm or something significant where the shift may need additional help. (Doc. 23, PageID 1029.) However, if Lewis has other pressing tasks that day, she has the option to not respond. If she responds it is considered a voluntary response. (Doc. 23, PageID 1030.)

An internal departmental Shift Personnel Expectation memorandum outlines many of the expectations for shift personnel. (Doc. 23, PageID 1123.) The Battalion Captains and Lieutenant as shift commanders ensure that these expectations are met each shift and can delegate these tasks to shift personnel. (Doc. 23, PageID 1123.) One of those tasks would include Battalion Captains determining equipment maintenance needs and providing that information to the Fire Chief to approve the repair order determined by the Battalion Chiefs as the shift commander. (Doc. 23, PageID 1128-1129.) Further, the Shift Personnel Expectation memorandum specifically provides that crew members are not to "freelance" on an emergency scene. (Doc. 23, PageID 1129; Doc. 23-15, PageID 1486-1487.) In other words, they are to perform the duties as directed by the incident commander, which is primarily the Battalion Chiefs or Lieutenant. (Doc. 23, PageID 1128.)

Battalion Captains are the immediate supervisors of part-time personnel and are required to report violations of policies to the Chief. (Doc. 23, PageID 1055-1056.) The Eaton Fire Department has a progressive discipline policy. The first step is an oral reprimand which can be administered by an immediate supervisor—or Battalion Captain or Lieutenant. (Doc. 23, PageID 1059; Doc. 21, PageID 530-531; Doc. 24, PageID 1688.) An oral reprimand may be documented as a "Record of Conversation" or may not have a record created for that discipline by the Battalion Captain. (Doc. 23, PageID, 1060, 1150-1151, 1156; Doc 23-22, PageID 1577-1578, 1582.)

6

Generally, if someone is not doing their job on a shift, it is the Battalion Captain that is ultimately responsible to make sure that the job is getting done. (Doc. 25, PageID 1906.)  Higher levels of discipline must be approved and administered by the Fire Chief and/or the City Manager upon recommendations and advisement by an employee's immediate supervisor.

Battalion Captains and Lieutenants also participate in interviews for individuals for positions within the fire department. (Doc. 22, PageID 793-795; Doc. 25, PageID 1914-1915; Doc. 24, PageID 1620-1621; Doc. 21, PageID 538.)  The Battalion Captains and Lieutenant ask questions during the interviews. (Doc. 22, PageID 796.) After participating in an interview, the Battalion Captains and Lieutenant complete an interview evaluation form and have a panel discussion with the Chief regarding the interview. (Doc. 22, PageID 797; Doc. 25, PageID 1915; Doc. 24, PageID 1661-1665, 1768-1819.)  In those discussions, the Chief asks for the opinions of the Battalion Captains regarding the candidates. (Doc. 22, PageID 798.)  The Battalion Captains and Lieutenant make recommendations on the person's interview. (Doc. 24, PageID 1620.) In the past, Roberts, Anderson and Quinn participated in the interview of Lewis for the position of Lieutenant. (Doc. 24, PageId 1609; Doc. 21, PageID 540.)  Quinn also participated in the interview for Roberts. (Doc. 21, PageID 538.)  In fact, Quinn recalled that the City Manager asked Quinn directly for his opinion on hiring Roberts. (Doc. 21, PageID 539.)

As the Shift Commander and Officer in Charge, if a part-time employee on the Battalion Captain's shift has an issue relating to their job, that employee would go to the Battalion Captain to resolve the matter. (Doc. 22, PageID 800.)  If there is an issue between two employees, the Battalion Captain would handle it, unless it escalated to something serious like a fight, and then the Battalion Captain would be the individual to report it to the Chief. (Doc. 22, PageID 800-801; Doc. 25, PageID 1943.)  The Battalion Captain as the Shift Captain is responsible to make sure that all reports are properly completed and logged into the computer system. (Doc. 22, PageID

820-821, 989; Doc. 25, PageID 1935; Doc. 24, PageID 1618, 1675-1676.) Battalion Captains have permissions in the Emergency Reporting software to unlock and lock reports that part-time employees do not have, if edits need to be made. (Doc. 25, PageID 1953.)

Battalion Captains and the Lieutenant approve trades of shifts. (Doc. 22, PageID 812-813, 953; Doc. 25, PageID 1937.) Section D of 5.01 of the Fire/EMS Personnel Policy Manual provides that a "trade must be approved by the Captain." (Id.) Lieutenant Lewis also has the authority to approve shift trades. (Doc. 22, PageID 813.) If someone calls off sick on a shift, they call the Battalion Captain assigned to that shift. (Doc. 25, PageID 1938; Doc. 21, PageID 477.) Thereafter, the Battalion Captain sends out a message to try and pick up someone to fill in so that the shift is not short staffed. (Doc. 25, 1938.) Additionally, Battalion Captains at times attend staff meetings in place of the Fire Chief. (Doc. 25, PageID 1917; Doc. 21, PageID 546.)

The Plaintiffs received copies of the personnel policy manual during their employment with the City. (Doc. 22, PageID 810, 939, 940; Doc. 25, PageID 1951; Doc. 24, PageID 1682, 1824.) Additionally, when the Plaintiffs accepted the position as Battalion Captains, they were advised that it was an exempt position and that they would be paid an annual salary. (Doc. 25, PageID 1949-1950; Doc. 24, PageID 1612, 1754; Doc. 21, PageID 672.)

Eaton Fire/EMS Personnel Manual provides that "Fire and EMS Division Officers and supervisors shall be responsible for tracking the status of their assigned employees as to overall performance. The officer is expected to coach, counsel, and if necessary, initiate disciplinary action to ensure compliance with applicable regulations." (Doc. 24, PageID 1688, 1837; Doc. 21, PageID 575.) Quinn acknowledged that this provision was specifically applicable to the Battalion Captain's position. (Doc. 21, PageID 573.) Similarly, Quinn acknowledged pursuant to the manual, Battalion Captains' responsibility includes:

> *** to properly instruct employees, enforce health and safety regulations, correct unsafe acts and conditions, ensure that only authorized and adequately training

8

personnel operate equipment, report and investigate accident/incidents, inspect areas of responsibility for hazards, ensure equipment is properly maintained, and instill safety awareness in employees. (Doc. 21, PageID 574.)

Additionally, Battalion Captains at times must also motivate their crew. (Doc. 21, PageID 543.)

E. *Incident Command on Emergency Calls*

There are three different types of dispatch within the fire department—a general alarm, a duty response, and a nonemergency request for service. (Doc. 23-4, PageID 1232.) A duty alarm is normally less serious than a general alarm (Doc. 22, PageID 834; Doc. 25, PageID 1928) and there are more duty alarms than general alarms. (Doc. 22, PageID 833; Doc. 25, PageID 1929.) The Fire Chief typically responds to major emergency calls or general alarms but not duty alarms. (Doc. 22, PageID 834; Exh. A attached hereto, Smith Affid. ¶4.) Thus, because the Battalion Captains respond to the duty alarms, they are generally the officer in charge on scenes. (Doc. 22, PageID 835.)

The incident command at the scene of an emergency is normally the highest-ranking officer present. (Doc. 23, PageID 1062; Doc. 21, PageID 544-545; Exh. A, ¶5.) Because the Battalion Captains are the shift commanders, they are typically the highest-ranking officer on an incident. (Doc. 23, PageID 1069; Doc. 22, PageID 817-818.) The Battalion Captain is the officer in charge if the Fire Chief is not on duty or on a scene. (Doc. 22, 799, 800.) As incident command, a Battalion Captain oversees the entire incident and all personnel on scene. (Doc. 23, PageID 1069; Doc. 22, PageID 803; Doc. 21, PageID 558.) If a Battalion Caption or Fire Chief is not present, and the Lieutenant is, the Lieutenant could be the shift commander. (Doc. 23, PageID 1062.) At times, if the Fire Chief comes to an emergency scene, he can assume incident command. (Doc. 23, PageID 1063.) However, on average in 2017, 2018 and 2019, the Fire Chief only responded to approximately two percent of the total calls. (Exh. A, ¶¶ 6,7.) Thus, on the remaining fire calls, the Battalion Captains or Lieutenant would be the incident command.

9

Upon arrival on the scene, the Battalion Captain sizes up the scene, by determining the nature, extent and seriousness of the situation and decides if additional units are needed or can be cancelled. (Doc. 22, PageID 801-802; Doc. 21, PageID 555.)  The Battalion Captain for the shift is generally the person to conduct radio traffic and makes calls for additional manpower as needed. (Doc. 21, PageID No. 431.) As the officer in charge on a scene, the Battalion Captain directs crew members as to what to do. (Doc. 22, PageID 804.)  Additionally, while on scene, the Battalion Captain is evaluating crew members and ensuring that they are performing their duties correctly. (Doc. 22, PageID 804; Doc. 21, PageID 558.)  The Battalion Captain is responsible for knowing and implementing the City of Eaton Fire and EMS guidelines and procedures on a scene. (Doc. 22, PageID 805-806.) There are incidents in which the Battalion Captains do not respond—minor incidents or most Medic calls—which are handled by part-time crew members. (Doc. 22, PageID 804.)  The Battalion Captain also evaluates whether the crew is operating the equipment safely and doing whatever function they are assigned safely and efficiently. (Doc. 21, PageID 558.) Firefighters and emergency medical staff benefit from having the Battalion Captains in place to supervise them so that they do not injure or kill themselves. (Doc. 23, PageID 1092.)

If the Chief is on scene on a major incident and assumes incident command, the Battalion Captain is assigned to an operations command role supervising the individuals that are performing the tasks such as search and rescue or fire attack. (Doc. 23, PageID 1064.)  The operations command component of an incident is secondary supervision to the Chief. (Doc. 23, PageID 1065.) If acting in an operations command role, the Battalion Captains direct the team in things such as search and rescue; investigation or fighting of a fire. (Doc. 23, PageID 1065-66.) If the Fire Chief is on scene and has assumed incident command, the Fire Chief cannot see everything  taking place on scene and thus, the Battalion Captains are in charge of the crews for their specific operations. (Doc. 23, PageID 1065.)  This is particularly true on the type of less common major incidents that

10

the Chief may be present for, and which may have not only the Eaton Fire Department present, but individuals from other mutual aid companies that respond. (Doc. 23, PageID 1065.)

Based upon all of the foregoing, Defendant contends that Plaintiffs' primary duty is management, that they do not fall under the First Responder Regulation, that the exemptions do apply, and because of this Plaintiffs are not entitled to overtime.

## II.    LAW AND ARGUMENT

Plaintiffs are exempt under the executive and administrative exemptions and the first responder regulation does not remove them from the exemptions. Plaintiffs' Complaint alleges violations of the FLSA under 207(a) and 207(k). (Doc. 1.)  The FLSA requires employers to pay overtime compensation to employees who work more than 40 hours a week. However, some employees are exempt from the FLSA's overtime pay requirement, including those who fall under the executive and administrative exemptions. 29 U.S.C. § 213(a).  Until recently, courts "narrowly construed [the exemptions] against the employers seeking to assert them." *Holt v. City of Battle Creek*, 925 F.3d 905, 909–10 (6th Cir. 2019) *citing Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453 (1960)).  However, in 2018, the Supreme Court held that courts should apply a "fair reading" to the exemptions.  *Id. citing Encino Motorcars, LLC v. Navarro* — U.S. ——, 138 S. Ct. 1134, 1142 (2018).

The executive exemption of the FLSA has four elements.  It applies if the employee (1) earns at least $455 per week; (2) the primary duty of the employee is management of the enterprise in which the employee is employed or of a customarily recognized department or division thereof; (3) the employee customarily and regularly directs the work of two or more other employees; and (4) the employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of

other employees is given particular weight. See 29 C.F.R. § 541.100. The administrative exemption applies if the employee is one (1) who earns at least $455 per week[1]; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

When reviewing the applicability of the foregoing exemptions, one must also consider, the "First Responder Regulation" set forth in 29 C.F.R. §541.3(b)(1). That regulation provides that the exemptions do not apply to firefighters, regardless of rank or pay level if their primary duty is firefighting activities rather than management of the enterprise. However, in determining whether an employee is non-exempt under the First Responder Regulation or is considered exempt under the executive, administrative, or HCE exemptions depends largely on that employee's primary duty. An employee's "primary duty" is the "principle, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

It is important to note that the first responder regulation "does not supplant the primary duty test in determining whether a particular first responder is exempt." *Fidler v. Twentieth Judicial Dist. Drug Task Force*, 325 F. Supp. 3d 840, 849 (M.D. Tenn. 2018), *case dismissed*, No. 18-6094, 2019 WL 5291290 (6th Cir. Feb. 6, 2019) citing *Morrison v. Cty. of Fairfax, VA*, 826 F.3d 758, 767 (4th Cir. 2016). Thus, high level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial and they meet the other elements of the test. *Id.* citing *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012). The *Fidler* court recognized that:

> [S]ome duties performed by high-ranking public safety officers are bona fide managerial duties, such as: 'evaluating personnel performance,' 'making

---

[1] There is no material issue of fact that Plaintiffs earn more than $455 per week. (Doc. 23-9, PageID 1468.)

recommendations as to hiring, promotion, discipline, or termination,' 'coordinating and implementing training programs,' 'maintaining inventory of property and supplies,' 'maintaining operational readiness through supervision and inspection of personnel, equipment, and quarters,' 'deciding how and where to allocate personnel,' and 'directing operations' at emergency scenes, 'including deciding whether additional personnel or equipment is needed.' " *Maestas*, 664 F.3d at 829 (citing <u>Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees</u>, 69 Fed. Reg. 22122, 22130 (Apr. 23, 2004) ).

*Fidler, supra*, 325 F. Supp. 3d at 849 (M.D. Tenn. 2018), *case dismissed*, No. 18-6094, 2019 WL 5291290 (6th Cir. Feb. 6, 2019); see also *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, at *9 (W.D. Tex. June 20, 2013). The percentage of time spent on exempt versus nonexempt duties is not determinative of which duty is primary. *See id.* § 541.700(b). Rather, it is but one factor among many that guides the primary-duty inquiry. *Id.* § 541.700(a) (listing other factors as "the relative importance of the exempt duties as compared with other types of duties; ... the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee"). *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, at *9–10 (W.D. Tex. June 20, 2013). In this case, although the Battalion Captains and the Lieutenant do perform firefighting and emergency medical duties on scenes and assist with daily tasks in the Fire Department, their primary duties are maintaining operational readiness through supervision and inspection of personnel, equipment, and quarters; directing operations' at emergency scenes, 'including deciding whether additional personnel or equipment is needed; deciding how and where to allocate personnel; coordinating and implementing training programs; making recommendations as to hiring, or discipline; informally evaluating personnel performance on scene; and maintaining inventory of property and supplies. Thus, the first responder regulation is not determinative of their status under the FLSA.

13

The controlling case in this matter in the Sixth Circuit, *Holt v. Battlecreek*, 925 F.3d 905 (6th Cir. 2019), is directly on point. In *Holt*, a retired battalion chief for the City of Battle Creek and another battalion chief, sued the City under the FLSA claiming they were improperly classified as exempt and thus, entitled to overtime wages. Similar to the Job Descriptions for the Eaton Battalion Captains, according to the Battle Creek battalion chiefs' job description, their primary job duties were to "[p]repare and administer disciplinary actions against subordinate personnel in the form of coaching and counseling, oral and written reprimands"; "[c]onduct evaluations of immediate subordinate personnel, review evaluations of other personnel assigned to shift, and provide feedback to subordinate personnel"; "[i]nspect fire stations, apparatus, equipment, and personnel to ensure operational readiness on a daily basis;" and "[p]lan and coordinate daily activities of shift personnel in concert with training, pre-plan inspections, maintenance, and public activities such as fire prevention."

The District Court ruled that the plaintiffs were exempt from the FLSA's overtime pay requirement under both the executive and the administrative exemptions. On appeal, the Sixth Circuit examined the application of the FLSA's executive exemption. At issue was whether the battalion chiefs' "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," and whether the battalion chiefs "ha[d] the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."

As to the "primary duty" element, the Court noted that ample evidence supported the determination that the battalion chiefs' primary job duty was managerial in nature. Like this case, in *Holt* the battalion chiefs "were required to directly supervise lower-ranking officers and personnel, evaluate personnel, administer and enforce department policy, and coordinate the day-

14

to-day operations of the department." While the battalion chiefs argued that their actual job duties were that of a "regular rank and file firefighter, with [a] few added responsibilities," the Court rejected that argument. Rather, the Sixth Circuit found that Battalion Chief Holt was "in charge" of all suppression personnel and Battalion Chief Erskine was "in charge" or "oversaw" the training division. Thus, the Sixth Circuit held that this element of the executive exemption was met.

In this instance, each Battalion Captain has a specific area of responsibility. Anderson was responsible for the day to day operations of A shift, as well as facility maintenance, public education and fire prevention activities. (Doc. 23-4, PageID 1231.) Roberts was responsible for the day to day operations of B shift as well as vehicle maintenance, fire gear and equipment. (Id.) Quinn was responsible for day to day operations of C shift as well as training officer for the division. (Doc. 23-4, PageID 1231; Doc. 23-20, PageID 1513-1514.) Additionally, they were required to directly supervise crew members on their shift, evaluate how they performed on scene; administer, implement and enforce department and City policy, and coordinate the day to day operations of the department when they were on shift.

Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700. Furthermore, the FLSA regulations recognize concurrent duties. 29 C.F.R. § 541.106 (2003) ("An exempt employee can also simultaneously direct the work of other employees and stock shelves"); *see also* 29 C.F.R. § 541.700(c) (2005)("assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees ... may have

management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register").

In this instance, based upon the size of the Fire and EMS Department and the nature of the work, the Battalion Captains and Lieutenant are multitaskers with concurrent responsibility for supervision of employees and the shift or department, and also performing hands-on work alongside hourly workers. However, the Department could not function without one person taking responsibility for essential tasks and directing the work of others. In *Leonard v. Dolgencorp, Inc.,* (W.D.Ky.2011), 2011 WL 2009937, the district court was faced with issues like those raised by the Plaintiffs here. In *Leonard* the plaintiff claimed that she spent about 70% of her time on manual labor or non-management issues. Despite Leonard's contentions, the court was persuaded by the defendant's arguments that the store could not function without one person taking responsibility for essential tasks. Accordingly, with respect to the first factor, the court held that:

> The Dollar General store could not effectively operate without Leonard functioning as the Store Manager. Her management duties are absolutely critical to day-to-day store operation. Without her, no one else had the ongoing responsibility to direct on-site actions. Anyone can do the manual labor, but someone must be responsible for overall operations and that someone is not the District Manager. Even though she may have performed non-managerial work a majority of the time, successful management of Leonard's store depended totally on her own decision-making and judgment. Accordingly, the Court finds that the relative importance of Leonard's management responsibility exceeds those of her more time-consuming non-management activities.

*Leonard,* 2011 WL 2009937. Similarly, in this instance, the Department could not effectively operate without the Battalion Captains or Lieutenant as Shift Commanders functioning in a managerial/supervisory role. This is particularly true when they are on the scene of an incident and must take incident command. *See generally, Cavins v. Dolgencorp, Inc.*, No. 1:10-CV-0261, 2011 WL 6848385, at *7–8 (S.D. Ohio Dec. 29, 2011). The Battalion Captains are responsible for the overall operation of their shift. Moreover, the Battalion Captains and Lieutenant exercise daily discretion over many small matters, including purchasing, scheduling, addressing minor

16

disciplinary issues or using their discretion to report it to the Fire Chief. Additionally, on scene, they size up the scene, establish command and determine if additional personnel or equipment are needed. Therefore, the importance of Plaintiff's management responsibility exceeds that of what may at times even be, more time-consuming non-management activities.

There are multiple court decisions where the executive exemption was applied even though the employee claimed to have spent the majority of his or her time on non-managerial tasks. *Cavins v. Dolgencorp, Inc.*, No. 1:10-CV-0261, 2011 WL 6848385, at *8–9 (S.D. Ohio Dec. 29, 2011)(internal citations omitted.) But in each instance, courts have determined, just as in this case, the plaintiff was the person in charge and exercised discretion daily. Regardless of whether the Plaintiffs in this instance, were performing firefighting or emergency medical duties, they were always supervising and always in charge. *Speedway, supra*, 506 F.3d at 506–507. The Department of Labor's regulations explicitly recognize Plaintiff's multi-tasking—performing management and nonexempt work simultaneously—as a managerial duty. *See* 29 C.F.R. § 541.106.

Additionally, although the Plaintiffs regularly point to the presence or existence of the Fire Chief to belie their management responsibilities, "active supervision and periodic visits by a [] manager do not eliminate the day-to-day discretion of the on-site [] manager." *Cavins v. Dolgencorp, Inc.*, No. 1:10-CV-0261, 2011 WL 6848385, at *10 (S.D. Ohio Dec. 29, 2011) citing *Speedway,* 506 F.3d at 506–07; *see also, Mitchell v. Abercrombie & Fitch,* 428 F.Supp.2d 725, 743 (S.D.Ohio 2006)(finding store manager exempt where "day-to-day authority" was not undermined by the fact that "District Managers regularly visited [plaintiff's] store and retained authority to override certain of his management decisions"), *aff'd by* 2007 U .S.App. LEXIS 7854 (6th Cir.2007). The Sixth Circuit in *Speedway* observed that simply because a Manager has a supervisor, does not mean he or she was not still "relatively free" from supervision. *Speedway,* 506 F.3d at 507.

In addition, Plaintiffs in this matter, customarily and regularly directs the work of two or more other employees. As Battalion Captains and the Lieutenant, Plaintiffs are generally the highest-ranking officer present on a scene and when the Chief is not present, in the Fire House. The Battalion Captain oversees most of the emergency and non-emergency scenes and all personnel on scene. (Exh. A, ¶5.) Battalion Captains are second in command in the fire department hierarchy and organizational chart, below the Fire Chief but above other part-time and volunteer firefighters and paramedics. (Smith Dep. Doc. 23-2, 23-3; Anderson Dep. Doc. 25, PageID 1919, 2023, 2024; Quinn Dep. Doc. 21, PageID. 429.) The Lieutenant position is to the side of the organizational chart because of the positions' administrative functions. (Doc. 23, PageID 1018.) In the chain of command of the Eaton Fire Department, the part-time and volunteer firefighters report directly to the Battalion Captains or the Lieutenant in charge of their shift. (Dep. Doc. 22, PageID 798.) Furthermore, the Lieutenant spends a minimum of four hours a week on administrative functions of the department such as scheduling, ordering supplies and reviewing reports.

It is crucial in a high stress incident that the officer in charge becomes the incident commander on the scene. (Doc. 25, PageID 1921.) Even when there are multiple departments on a scene, there is one incident commander to maintain order. (Doc. 25, PageID 1922.) If the Fire Chief is not on scene, the Battalion Captain for the shift is the incident commander. The Battalion Captain follows the incident operation guidelines for a specific incident. (Doc. 25, PageID 1927-28; Doc. 21, PageID 549.)

Additionally, when examining whether the plaintiffs' "recommendations given particular weight" element in hiring and firing, the *Holt* Court also found that there was sufficient evidence establishing this element. Even though the battalion chiefs' recommendations, at times, were overruled by the department chief, the evidence demonstrated that the battalion chiefs'

"suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees were given 'particular weight.'" Additionally, one of the plaintiffs issued discipline in the department and the Department Chief testified that he gave "a lot of weight" to Holt's recommendations. The other plaintiff was responsible for managing vacation and "Kelly days" in the department. As such, the Court found that the recommendations of the battalion chiefs were given particular weight for the purpose of the executive exemption.

In this case, Plaintiffs all testified that they participated in interviews of employees, including completion of evaluation sheets, and scoring the candidates. Thereafter, they met with the Chief and discussed their evaluations. This was true of not only part-time employees (Collins Dep. Doc. 20, PageID 209, 210), but specifically for positions of other officers, such as battalion captains and lieutenant. The City Manager asks for the Battalion Captains' opinions and made sure that their opinion is considered in hiring and firing situations. (Doc. 20, PageID 211.) The City Manager noted that the Battalion Captains are the ones that are working with the person, so their opinion is important to him. (Doc. 20, PageID 133.) Specifically, when Roberts was hired, that was based upon the opinion of Quinn. (Doc. 20, PageID 212; Doc. 21, PageID 539.) The City Manager gave particular weight to Quinn's opinion when making their final evaluations for filling Robert's Battalion Captain position. (Doc. 20, PageID 212-213.) Based on Robert's personality and fit and "Quinn's recommendations," the City hired Roberts. (Doc. 20, PageID 213.) Additionally, pursuant to the City's policy, "[a]ll supervisory personnel shall maintain the proper discipline of all employees under their supervision. It shall normally be the immediate supervisor's responsibility to counsel his or her employees for minor disciplinary infractions and to report more serious violations to the division head." (Doc. 20, PageID 367.) Thus, under the executive exemption, the Battalion Captains and Lieutenant suggestions and recommendations as to the hiring, discipline or any other change of status of other employees is given particular weight.

19

Accordingly, based upon the facts and law, set forth above, there is no material issues of fact, that Plaintiffs are exempt employees under the FLSA.  Plaintiffs are compensated on a salary basis and earn more than $455 per week; their primary duty is managing the Department on their shift; they regularly and customarily direct the work of their shift crew; and their suggestions and recommendations as to hiring, firing or discipline and other status of their employees is given particular weight.  Additionally, they perform office or non-manual work directly related to the management and operations of the Department, including but not limited to, scheduling, purchasing, reviewing and preparing reports, tracking and inputting training and records.  As such, Plaintiffs qualify for the executive and administrative employee exemptions.

III.    **CONCLUSION**

Based upon all the foregoing, Defendant City of Eaton respectfully requests that this Court grant it summary judgment on all claims of Plaintiffs and dismiss this case in its entirety.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., LPA

/s/ *Dawn M. Frick*
Jeffrey C. Turner (0063154)
Dawn M. Frick (0069068)
Alex J. Hale (0091682)
8163 Old Yankee Street, Ste. C
Dayton, Ohio 45458
Phone: (937) 222-2333
Fax:    (937) 222-1970
Emails: jturner@sdtlawyers.com
            dfrick@sdtlawyers.com
            ahale@sdtlawyers.com
*Trial Attorneys for Defendant City of Eaton*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the all counsel of record.

/s/ Dawn M. Frick
Dawn M. Frick (0069068)

20