IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
WESTERN DIVISION, DAYTON

| | | |
|---|---|---|
| **JAMES L. QUINN et al.,** | : | |
| *Plaintiffs*, | : | |
| | : | Case No. 3:19-cv-00241 |
| v. | : | Judge Michael Newman |
| **CITY OF EATON,** | : | |
| *Defendant*. | : | |

**JOINT MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT SETTLEMENT**

    Defendant City of Eaton, Ohio, and Plaintiffs James L. Quinn, Randall K. Anderson, James H. Roberts, and Mallory Lewis (collectively referred to as "the Parties") have reached an agreement that will resolve all claims in the lawsuit, which alleged that the City failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* For the reasons set forth in the attached Memorandum in Support of the Joint Motion for Approval of Fair Labor Standards Act Settlement, and because the agreement satisfies the criteria for approval of an FLSA settlement, the Parties respectfully request that the Court enter an order: (1) approving the Settlement Agreement, attached as Exhibit A to the Declaration of Sara L. Faulman, as a fair, adequate, and reasonable resolution of a bona fide dispute; (2) staying this case for an additional 30 days to permit Defendant to effectuate payment under Paragraph 2.1(a) of the Settlement Agreement; and (3) directing the Parties to file, within 30 days, either a stipulation of dismissal or a joint status report.

1

| | |
|---|---|
| June 25, 2021 | Respectfully submitted, |
| /s/ Sara L. Faulman<br>Sara L. Faulman (*Pro Hac Vice*)<br>John W. Stewart (*Pro Hac Vice*)<br>McGILLIVARY STEELE ELKIN LLP<br>1101 Vermont Avenue, N.W.<br>Suite 1000<br>Washington, DC  20005<br>Phone:  (202) 833-8855<br>slf@mselaborlaw.com<br>jws@mselaborlaw.com | /s/ Dawn Frick, by Sara L. Faulman with email authority from Dawn Frick<br>Jeffrey C. Turner (0063154)<br>Dawn M. Frick (0069068)<br>SURDYK, DOWD & TURNER CO., LPA<br>8163 Old Yankee Street, Ste. C<br>Dayton, OH 45458<br>Telephone: (937) 222-2333<br>Fax: (937) 222-1970<br>jturner@sdtlawyers.com<br>dfrick@sdtlawyers.com |
| Henry Arnett<br>LIVORNO & ARNETT CO., LPA<br>1335 Dublin Road, Columbus, OH 43215<br>(614) 224-7771 Phone<br>(614) 224-7775 Fax<br>counsel@oapff.org | *Counsel for Defendant* |
| *Counsel for Plaintiffs* | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
WESTERN DIVISION, DAYTON

| | | |
|---|---|---|
| JAMES L. QUINN et al., | : | |
| *Plaintiffs*, | : | Case No. 3:19-cv-00241 |
| v. | : | Judge Michael Newman |
| CITY OF EATON, | : | |
| *Defendant*. | : | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT SETTLEMENT**

Defendant City of Eaton, Ohio, ("Defendant" or "City") and Plaintiffs, three Captains and one Lieutenant who are or were employed at various times by the City, have reached an agreement that will resolve all claims in the lawsuit, which alleged that the City failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* As set forth below, because the agreement satisfies the criteria for approval of an FLSA settlement, the Parties respectfully request that the Court enter an order: (1) approving the Settlement Agreement, attached as Exhibit A to the Declaration of Sara L. Faulman ("Settlement Agreement", as a fair, adequate, and reasonable resolution of a bona fide dispute; (2) staying this case for an additional 30 days to permit Defendant to effectuate payment under Paragraph 2.1(a) of the Settlement Agreement; and (3) directing the Parties to file, within 30 days, either a stipulation of dismissal or a joint status report

    **I.**      **Background**

On August 9, 2019, three current and former Captains and one EMS Lieutenant with the City of Eaton Fire and EMS Division filed the instant lawsuit against the City, seeking unpaid

1

overtime wages, liquidated damages, and attorneys' fees and costs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (Doc. 1).

As Captains, Plaintiffs Quinn, Anderson, and Roberts worked a regularly repeating cycle of 24-hour shifts, followed by 48 hours off before the next shift. As an EMS Lieutenant, Plaintiff Lewis worked a regularly recurring schedule of three 12-hour shifts and one 4-hour shift each week. In addition, all Plaintiffs have alleged that they all regularly worked additional overtime shifts and performed pre-shift and post-shift work in addition to their regularly scheduled shift hours, without lawful overtime pay. Under a 14-day alternate work period for fire fighters pursuant to 29 U.S.C. § 207(k), the City must compensate non-exempt fire fighters at one and one-half their regular rate of pay for all hours suffered or permitted in excess of the 106-hour overtime threshold in each 14-day work period. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. Plaintiffs assert that because of their repeating schedules, as well as unscheduled overtime shifts and their pre- and post-shift work, they performed work in excess of the 106-hour overtime threshold for which they were not fully compensated with FLSA overtime (*i.e.*, overtime paid at the rate of one and one-half the employee's regular rate). As a result, Plaintiffs sought back pay, liquidated damages, and attorneys' fees and costs. *See* 29 U.S.C. § 216(b).

The City denies liability and contends that Plaintiffs were exempt from the FLSA as administrative and/or executive employees. *See* 29 U.S.C. § 213(a). (Doc. No. 6, PageID 33). However, Plaintiffs dispute that their primary job duties were exempt managerial/executive or administrative work and contend that their primary job duty was to provide frontline emergency response work. Pursuant to Department of Labor regulations, "[s]uch employees do not qualify as exempt executive employees . . . . [or] administrative employees." 29 C.F.R. §§ 541.3(b)(1)-(3). The Parties filed cross-motions for summary judgment (Doc. Nos. 26, 27), as well as opposition

2

and reply briefs (Doc. Nos. 29-32). The Court ultimately denied both Parties' motions, and trial was set for June 7, 2021 (Doc. No. 10). On April 23, 2021, the Parties requested that the Court modify the Scheduling Order by vacating the trial date and referring them to mediation with the Honorable Sharon L. Ovington (Doc. No. 36). The Court granted the request on April 27, 2021 (Doc. No. 37), and the Parties participated in mediation on May 11, 2021. As a result of arms' length negotiations, at the conclusion of the telephonic mediation before the Honorable Sharon L. Ovington, the Parties reached a settlement in principle of all claims for the total amount of $185,000.00, which includes back pay, liquidated damages, and attorneys' fees and costs. On June 24, 2021, the Parties executed the final Settlement Agreement (attached hereto as Exhibit A to the Declaration of Sara L. Faulman). For the reasons set forth below, the Parties respectfully submit that this Court should approve the settlement of Plaintiffs' FLSA claims as a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982); *see also Fisher v. Samson Tube, LLC*, No. 3:20-cv-351, 2021 U.S. Dist. LEXIS 71866, at *1 (S.D. Ohio Apr. 14, 2021) (Newman, J.) (same).

    **II.**    **Summary of Settlement Terms**

Counsel for the Parties have reduced the terms of the proposed settlement to writing. The Settlement Agreement provides that the City will pay a total settlement amount of $185,000.00 to fully resolve the lawsuit, including $72,387.87 in gross back pay (subject to standard deductions and withholdings by the City) and liquidated damages, as well as $112,612.13 in attorneys' fees and costs. *See* Faulman Decl., ¶ 4. In light of the City's budgetary concerns, the Parties have agreed that payment will be made in two installments, the first to be paid within 14 days of the Court's approval of the Settlement Agreement, in the total gross amount of $100,000.00, and the second to be paid no later than March 1, 2022, in the total gross amount of $85,000.00. The first

installment will include: (1) $19,564.29 in gross back pay; (2) $19,564.29 in liquidated damages; and (3) $60,871.43 in attorneys' fees and costs. *See* Faulman Decl., ¶ 5; *id*. at Ex. A at ¶ 2.1(a) & Attachment A (setting forth individual distributions to each plaintiff). The second installment, to be paid by the City no later than March 1, 2022, will include (1) $16,629.65 in gross back pay; (2) $16,629.65 in liquidated damages; and (3) $51,740.70 in attorneys' fees and costs. *See* Faulman Decl., ¶ 5; *id*. at Ex. A at ¶ 2.1(b) & Attachment A.

Plaintiffs and their counsel were responsible for determining the allocations among Plaintiffs, which are based entirely on Plaintiffs' actual damages calculations. Faulman Decl., ¶ 6; *id*. at Ex. A, ¶ 1(B). For purposes of computing the gross amount of back pay and liquidated damages, Plaintiffs relied on Defendant's payroll and timekeeping records for each Plaintiff, as well as Plaintiffs' sworn statements regarding their off-the-clock overtime work. Faulman Decl., ¶ 6.

In addition to the foregoing payments, the City has agreed to convert the position descriptions for Captain and EMS Lieutenant to "non-exempt" status and has already begun paying its Captains and Lieutenant FLSA overtime. *See* Faulman Decl. at Ex. A, ¶ 1.6. In addition, in consideration of the payments provided, Plaintiffs have agreed to sign their new position descriptions, release their FLSA overtime claims against the City through the date of the Parties' execution of the Settlement Agreement, and dismiss their lawsuit subject to the continued jurisdiction of the Court for purposes of enforcing the terms of settlement. See Faulman Decl., at Ex. A, ¶¶ 1.8, 1.9. The release and agreement to dismiss are set forth in Paragraphs 3.1, 3.2, 3.3, and 4.1 of the Settlement Agreement.

The Plaintiffs have been notified of (1) what Plaintiffs are relinquishing by entering into the Settlement Agreement; (2) the specific amounts each Plaintiff will receive under the Settlement

4

and how and when those amounts will be distributed, including attorneys' fees and costs; (3) how to access Plaintiffs' counsel's website to view each of the other Plaintiffs' recovery under the settlement; and (4) how to submit objections to the settlement. Faulman Decl., ¶ 7. To date, not a single Plaintiff has submitted an objection to the Settlement, and all Plaintiffs have affirmatively signed the Settlement Agreement. Faulman Decl., ¶ 8.

Under the terms of the Settlement Agreement, upon approval by the Court, the Plaintiffs will stipulate to dismissal of this lawsuit with prejudice and, within 14 days of approval, the City will issue the first installment payments to Plaintiffs. Faulman Decl., at Ex. A, ¶¶ 4.1, 2.1.

### III. Argument

#### a. *The Settlement Agreement Should be Approved as a Fair and Reasonable Resolution of a Bona Fide Dispute*

When employees bring a private action for violations of the FLSA, the parties must present any proposed settlement to the district court, which "must scrutinize the proposed settlement for fairness and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Fisher*, 2021 U.S. Dist. LEXIS 71866, at *1 (Newman, J.) (quoting *Snook v. Valley OB-GYN Clinic, P.C.*, No. 14-CV-12303, 2014 U.S. Dist. LEXIS 177517 (E.D. Mich. Dec. 29, 2014); *Lynn's Food Stores*, 679 F.2d at 1354). If a settlement reflects "a reasonable compromise over the issues" that are in dispute, the Court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

The decision to approve an FLSA settlement of a bona fide dispute as fair and reasonable lies within the trial court's discretion. *Lynn's Food Stores,* 679 F.2d at 1350. In exercising that discretion, "[c]ourts should consider the following factors in determining whether a proposed FLSA settlement is fair and reasonable: (1) the existence of fraud or collusion behind the

settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Fisher*, 2021 U.S. Dist. LEXIS 71866, at *1-2 (Newman, J.) (quoting *Snook v. Valley OB-GYN Clinic, P.C.*, 2014 U.S. Dist. LEXIS 177517). Courts determining the reasonableness of multi-plaintiff settlements also consider the following two additional factors: "the reaction of absent class members" and whether the "public interest" is served by settlement. *See UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007). As this is an "opt-in" lawsuit pursuant to 29 U.S.C. § 216(b), rather than an "opt-out" class action pursuant to Fed. R. Civ. P. 23, there are no absent class members who will be bound by the terms of this Settlement Agreement. Accordingly, the Court may disregard the "reaction of absent class members" factor here. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *6 (S.D. Ohio Sep. 20, 2019) ("The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.") (quoting *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (E.D. Ky. Oct. 23, 2008)).

Each of the seven pertinent factors analyzed by courts in the Sixth Circuit in determining whether to approve an FLSA settlement weigh in favor of settlement approval in this case. The Settlement Agreement should therefore be approved as a fair and reasonable compromise of a bona fide dispute.

### 1. *The Absence of Fraud or Collusion Behind the Settlement*

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D.

Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

Here, the Parties' settlement was achieved in good faith through arms'-length negotiations at a mediation presided over by the Honorable Sharon L. Ovington. Moreover, the Parties reached settlement of this case after early negotiations proved unsuccessful, the parties completed discovery, briefed summary judgment, and began preparing for trial. Faulman Decl., ¶ 9. The case has been ethically and zealously litigated by both sides, up to and including final settlement negotiations. Faulman Decl., ¶ 10. Defendant has had no influence in determining the distribution of the settlement funds, and no conflict of interest is present. Faulman Decl., ¶ 11. Accordingly, the risk of fraud or collusion here is minimal, as the Parties have a bona fide dispute and both Plaintiffs and the City are represented by experienced counsel who, in the "adversarial context of a lawsuit," negotiated "a reasonable compromise of disputed issues." *Lynn's Food Stores,* 679 F.2d at 1354. This factor therefore weighs in favor of approval.

### 2. *The Complexity, Risk, Expense, and Likely Duration of the Litigation*

The complexity, expense, and likely duration of the litigation also weigh in favor of approval. Litigating Plaintiffs' FLSA claims through trial will be fact-intensive and time consuming. Although the Parties have already completed discovery, including substantial written discovery and depositions of all parties, this settlement was reached at the outset of the pretrial process. Were the case to proceed to trial, both sides would incur considerable additional costs in drafting and arguing motions *in limine* and otherwise preparing for and conducting a jury trial. Additionally, because this case hinges on a contentious legal issue (the appropriate application of the primary duty test in the context of first responders), an appeal of the trial verdict would be highly likely, regardless of the outcome. *See* Pl. Mot. For Sum. J. (Doc. No. 26); Def. Mot. for

7

Sum. J. (Doc. No. 27). Avoiding the substantial expenditure of time and resources involved in continuing to litigate this case through trial and appeal is in both Parties' interests.

Moreover, because this case centers on a dispute over whether Plaintiffs are properly classified as exempt from the FLSA, both sides bear a real measure of risk in pressing this case to a final decision. Although Plaintiffs and the City are each confident in the merits of their claims, the "all or nothing" nature of a misclassification case makes the prospect of mitigating risk through compromise beneficial to both sides. *See Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 U.S. Dist. LEXIS 187530, at *35-36 (E.D. Cal. Oct. 28, 2019) (recognizing that a plaintiff alleging misclassification "risks recovering nothing").

### 3. *The Stage of the Proceedings and the Amount of Discovery Completed*

To ensure the Plaintiffs have had the opportunity to sufficiently evaluate their case and assess the adequacy of the proposed settlement, "the Court must consider the amount of discovery engaged in by the parties." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *9 (S.D. Ohio Aug. 17, 2018) (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)). Here, at the time settlement was reached, the Parties had already completed full discovery, briefed summary judgment, obtained a summary judgment decision from the Court, and begun preparing for trial. Plaintiffs were able to prepare independent damages calculations, relying on the City's payroll and time records, deposition testimony, and input from the Plaintiffs as necessary. Further, per the Settlement Agreement, the Captain and EMS Lieutenant positions will now be compensated with FLSA overtime pay going forward, so continuing to litigate this case will serve only to increase the Parties' fees and costs, amplify risk, and expend additional court resources. *See* Faulman Decl., ¶ 12. As such, this factor weighs in favor of approval.

### 4. *The Probability of Success on the Merits*

Assessing Plaintiffs' probability of success on the merits, given the extent of the recovery afforded under the Settlement Agreement, also weighs in favor of approval. In the absence of a resolution by settlement, the Parties will vehemently dispute the facts and the law at trial and on appeal. Most significantly, the City would continue to assert that Plaintiffs are exempt from the FLSA and dispute the extent of unpaid off-the-clock work performed. *See Van Buren v. Health Alliance Plan of Michigan*, No. 17-11336, 2019 U.S. Dist. LEXIS 25532, at *5 (E.D. Mich. Feb. 19, 2019) (finding significant litigation risks not only in demonstrating poorly documented hours of work but also in the issue of "whether the plaintiffs were subject to the overtime wage regulation at all"); *see also Quinn v. Palmer Coll. Found., Inc.*, No. 6:12-cv-1737-Orl-37TBS, 2013 U.S. Dist. LEXIS 204315, at *4 (M.D. Fla. Oct. 4, 2013), *R. & R. adopted* 2013 U.S. Dist. LEXIS 204396 (M.D. Fla. Oct. 23, 2013) (holding that "Defendant continue[d] to dispute whether Plaintiff was an 'exempt' employee for purposes of the FLSA" rendered the "probability of success on the merits uncertain"). The Parties will also dispute whether the City acted in good faith or committed a willful violation of the FLSA. *See, e.g., Van Buren*, 2019 U.S. Dist. LEXIS 25532, at *6 (noting, among other risks, that "[i]f the jury concluded that the violations were not willful, then a shorter limitations period of two years rather than three years would have applied"). Although the Parties believe their legal positions to be strong, continuing to litigate would be costly and present significant risk to both sides. Given the strength of the recovery, this factor also weighs heavily in favor of approval.

### 5. *The Range of Possible Recovery*

Although Plaintiffs believe that they will be able to demonstrate that they have been misclassified as exempt and otherwise establish the City's willful violations of the FLSA, Plaintiffs

9

are nevertheless cognizant of the legal and factual difficulties they face in this litigation. For example, there is no doubt that continued litigation and trial would be costly, arduous, and complex. This settlement, on the other hand, makes monetary relief available to the Plaintiffs in a prompt and efficient manner, including the expectation that they will be paid overtime correctly moving forward.

In addition, despite Plaintiffs' confidence in their case, Plaintiffs recognize that they face some risk in litigating their misclassification. The settlement represents a substantial recovery for Plaintiffs that would reduce to zero if Defendant were successful on the single issue of Plaintiffs' exemption status, which hinges on one, difficult-to-forecast issue: the determination of Plaintiffs' primary job duty. Further, if Plaintiffs fail to establish that Defendant acted willfully, the recovery period will be shortened an entire year. And likewise, if Defendant were to successfully demonstrate that it acted in good faith, it may not owe liquidated damages even on that shortened recovery period.

Here, the total gross payment to the Plaintiffs under the Settlement Agreement, after attorneys' fees and costs, is $72,387.87, inclusive of both backpay and liquidated damages. One way to look at the damages is that this figure represents *full* backpay damages for the expanded three-year statute of limitations – which is available only upon a showing of willfulness. Faulman Decl., ¶ 13. Put another way, the figure represents 50% of the back pay damages under the expanded three-year statute of limitations, and full liquidated damages on that amount. Faulman Decl., ¶ 14. Moreover, the damages take into account not only the Plaintiffs' regular schedules and recorded work, but also a full 30 minutes of unrecorded pre-shift/post-shift work for every shift, representing at or near the best-case scenario for the amount of off-the-clock work performed. Faulman Decl., ¶ 15.

Considering the risks associated with trying the claims *and* establishing damages, this settlement—both the monetary recovery and the conversion of the Plaintiffs' positions to non-exempt—is clearly reasonable. *See, e.g.*, *Van Buren v. Health Alliance Plan of Michigan*, No. 17-11336, 2019 U.S. Dist. LEXIS 25532, at *5 (E.D. Mich. Feb. 19, 2019) (approving settlement at approximately 52% of potential recovery, reasoning that "[a]lthough the proposed recovery represents a discount against the plaintiffs' best hopes, the settlement represents a fair and reasonable resolution of a bona fide dispute between the parties on the exact amount of overtime wages due, considering the significant risks and problems of proof that the plaintiffs would have faced at trial," such as the risk that the "lack of comprehensive detailed or formally recorded time sheets" could lead a jury to award "much less than their best-case recovery"); *Crawford v. Lexington-Fayette Urban County Government*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *25 (E.D. Ky. Oct. 23, 2008) (approving settlement at 70% of potential recovery, noting also that "plaintiffs are receiving non-monetary relief in the form of important policy changes that could not have been achieved by a jury award of monetary damages"); *see also, e.g.*, *Felix v. Breakroom Burgers & Tacos*, 15 Civ. 3531, 2016 U.S. Dist. LEXIS 30050, at *2 (S.D.N.Y. 2016) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

Thus, based on the significant risks of both trying the merits of the case and establishing damages, this factor weighs heavily in favor of approval.

### 6. *Counsel's Opinion*

The opinion of experienced counsel should be afforded substantial consideration by the Court. *See, e.g.*, *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) ("The recommendation of class counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference."); *see*

11

*also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced [*12] counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *23 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class."). Here, counsel for both parties have weighed the respective risks in proceeding with the litigation and have extensively analyzed the City's potential liability based on damage calculations prepared by Plaintiffs' counsel. Based on their experience, counsel for both parties believe that this settlement is fair, reasonable, and adequate.

### 7. Public Interest

"If a settlement agreement reflects a reasonable compromise over the issues, a court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Foster v. Residential Programs*, No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS 30963, at *11 (S.D. Ohio Feb. 18, 2021) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Based on the foregoing factors and in the opinion of experienced counsel, this Settlement Agreement is in the public interest, and should be approved. Faulman Decl., ¶ 16.

### b. The Attorneys' Fees and Costs Are Reasonable

The Settlement Agreement includes $112,612.13 in reasonable fees and expenses to be paid to Plaintiffs' counsel, a substantial reduction from the fees actually incurred already in litigating this case that the Court should approve as part of the fair and reasonable settlement of Plaintiffs' claims. *See* Faulman Decl., ¶¶ 17-38, 39 (total fees and expenses accrued exceed $267,725.20 as of June 4, 2021); *id*. at Ex. A, ¶ 2.1.

12

The FLSA provides that the "court in such action **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). When evaluating the reasonableness of fees, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In the particular context of the FLSA, courts should be cognizant that "[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Bailey*, 2020 U.S. Dist. LEXIS 144274, at *6 ((citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)). Ultimately, a "reasonable fee is one that is adequate to attract competent counsel but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (internal punctuation and quotations omitted).

"The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Then, after determining the lodestar, a court may adjust that amount based on the following twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Crawford*, 2008 U.S. Dist. LEXIS 90070, at *39-40 (quoting *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 435 (6th Cir. 2002)). Although a court may adjust the reasonable fees to be awarded, there is a "strong presumption" that the lodestar amount is reasonable. *Tlacoapa v. Carregal*, 386

13

F. Supp. 2d 362, 373 (S.D.N.Y. 2005); *see also Ohio & Vicinity Regional Council of Carpenters v. Archer Interiors, Inc.*, No. 5:08CV1996, 2009 U.S. Dist. LEXIS 153507, at *21 (N.D. Ohio July 30, 2009) (same); *Jarvis v. Michigan Bell Telephone Co.*, No. 08-12262, 2009 U.S. Dist. LEXIS 42332, at *10 (E.D. Mich. May 19, 2009) (finding "no reason to disturb the presumption that the lodestar amount is a reasonable fee").

In determining the lodestar amount, "[c]ourts use the prevailing market rate, 'defined as the rate that lawyers of comparable skill and experience reasonably expect to command within the venue of the court record,' as a guideline to arrive a reasonable hourly rate." *Foster v. Residential Programs*, No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS 30963, at *12 (S.D. Ohio Feb. 18, 2021) (quoting *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007)). For cases such as this one, Plaintiffs' counsel could reasonably expect to command the following rates in the Southern District of Ohio: $450 per hour for managing partner; $375-400 per hour for other partners; $325 per hour for experienced associates; and $150 per hour for paralegals.[1] *See* Faulman Decl., ¶¶ 27, 28, 31, 32, 33.

Plaintiffs' counsel has already reasonably expended in excess of 673.1 hours of attorney work, as well as 181.6 hours in paralegal work, litigating this case. Faulman Decl., ¶¶ 17-38. Moreover, these amounts do not include the hours expended (and which Plaintiffs' counsel will continue to expend) finalizing settlement, preparing a motion for settlement approval, and

---

[1] *See Perry v. Krieger Beard Services, LLC*, No. 3:17-cv-161, 2020 U.S. Dist. LEXIS 153069, at *1 (S.D. Ohio Aug. 24, 2020) ("Judges in this district have found hourly rates ranging from $300 to $450 to be reasonable for work on FLSA actions such as this.") (Newman, Mag. J.); *see also, e.g.*, *Berry v. Fun Time Pool & Spa, Inc.*, No. 2:20-CV-1610, 2020 U.S. Dist. LEXIS 148836 (S.D. Ohio Aug. 18, 2020) ($445); *Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-CV-473, 2020 U.S. Dist. LEXIS 39157 (S.D. Ohio Mar. 6, 2020) ($350); *Pineda v. Pit Columbus, LLC*, No. 2:17-CV-668, 2017 U.S. Dist. LEXIS 195288 (S.D. Ohio Nov. 28, 2017) ($450); *Rembert v. A Plus Home Health Care Agency, LLC*, No. 2:17-CV-287, 2020 U.S. Dist. LEXIS 51489(S.D. Ohio Mar. 25, 2020) ($350 and $300).

14

coordinating payment to Plaintiffs. Faulman Decl., ¶ 20. Thus, multiplying those hours by the reasonable market rates, the presumptively reasonable lodestar amount currently exceeds **$260,047.50**, more than *twice* the fees and costs agreed to under the Settlement Agreement. Faulman Decl., ¶ 39.

Moreover, the twelve enhancement factors also weigh in favor of increasing the lodestar. *See Paschal*, 297 F.3d at 435. "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019). This case in particular presented a challenging legal question—whether plaintiffs were non-exempt frontline supervisors pursuant to 29 C.F.R. § 541.3 or exempt executive or administrative employees—and thus involved a considerable investment in time and effort, uncertain outcomes, and serious risks for all Parties. Determination of a single issue, whether Plaintiffs' primary job duties were to perform frontline emergency response, could potentially prevent Plaintiffs from recovering *any* damages. Despite these considerable challenges and litigation risks, Plaintiffs' counsel achieved the successful result of a settlement award including damages after attorneys' fees equal to full back pay for a recovery period reaching back three years from the time this suit was filed. Additionally, the City has agreed to convert the Plaintiffs' positions to "non-exempt" so they will be paid overtime prospectively. Thus, the results obtained for the Plaintiffs are exceptional. *See* Faulman Decl., ¶¶4, 12-16.

Also weighing in favor of upward adjustment to the lodestar, Plaintiffs' counsel have extensive experience litigating multi-plaintiff wage-and-hour actions on behalf of fire fighters and emergency responders, as well as other employees, nationwide. Faulman Decl. ¶¶ 17-35; *see also, e.g.*, *Morrison v. City of Fairfax, Virginia*, 826 F.3d 758, 767 (4th Cir. 2016); *Mullins v. City of New York*, 653 F.3d 104, 115 (2d Cir. 2011). In addition, Plaintiffs' Counsel agreed to advance the

15

expenses necessary to litigate this case. Faulman Decl., ¶ 36. Finally, had Plaintiffs' counsel achieved similar success in a case before a venue in its local market of Washington, D.C., counsel would be entitled to recover fees at considerably higher hourly rates. *See* Faulman Decl., ¶ 35; *see also Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000); D.C. Code § 32-1308(b)(1). Under the reasonable rates established by the United States Attorneys' Office in the District of Columbia for use in fee-shifting cases in the Washington, D.C., area, Plaintiffs' counsel's baseline lodestar amount would be in excess of $404,570.50. *See* Faulman Decl., ¶ 35.

Most importantly, in determining the reasonableness of a fee award, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In this case, the results obtained for the Plaintiffs are excellent and the Settlement Agreement should be approved as fair and reasonable.

## IV.    CONCLUSION

As set forth above, the Parties' Settlement Agreement reflects an arm's length negotiation by counsel and is a fair, adequate, and reasonable settlement of a bona fide dispute. Accordingly, the Parties respectfully request that this Court enter an Order (1) approving the Settlement Agreement, attached as Exhibit A to the Declaration of Sara L. Faulman, as a fair, adequate, and reasonable resolution of a bona fide dispute; (2) staying this case for an additional 30 days to permit Defendant to effectuate payment under Paragraph 2.1(a) of the Settlement Agreement; and (3) directing the Parties to file, within 30 days, either a stipulation of dismissal or a joint status report.

| | |
|---|---|
| June 25, 2021 | Respectfully submitted, |
| /s/ Sara L. Faulman<br>Sara L. Faulman (*Pro Hac Vice*)<br>John W. Stewart (*Pro Hac Vice*)<br>McGILLIVARY STEELE ELKIN LLP<br>1101 Vermont Avenue, N.W.<br>Suite 1000<br>Washington, DC 20005<br>Phone: (202) 833-8855<br>slf@mselaborlaw.com<br>jws@mselaborlaw.com | /s/ Dawn Frick, by Sara L. Faulman with email authority from Dawn Frick<br>Jeffrey C. Turner (0063154)<br>Dawn M. Frick (0069068)<br>SURDYK, DOWD & TURNER CO., LPA<br>8163 Old Yankee Street, Ste. C<br>Dayton, OH 45458<br>Telephone: (937) 222-2333<br>Fax: (937) 222-1970<br>jturner@sdtlawyers.com<br>dfrick@sdtlawyers.com |
| Henry Arnett<br>LIVORNO & ARNETT CO., LPA<br>1335 Dublin Road, Columbus, OH 43215<br>(614) 224-7771 Phone<br>(614) 224-7775 Fax<br>counsel@oapff.org | *Counsel for Defendant* |
| *Counsel for Plaintiffs* | |

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 25, 2021, I caused the foregoing to be filed in this Court's electronic filing system, effecting its service on all counsel of record.

/s/ *Sara L. Faulman*
Sara L. Faulman